UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
 Peter Thompson (HEAD OF HOUSEHOLD),

                          Plaintiff,                              Case No.  19 CV 01360 (KPF)

              - against -

CRF-CLUSTER MODEL PROGRAM, LLC,
YOLANDA ROBERTS CARL, C. ICHAN
CHILDRENS RESCUE FUND and board members
STANLEY W. BRICE, NANCY MELENDEZ,
RICHARD GUZMAN, ORLANDO IVEY,
RALPH MESSINA, STANLEY E. CRUMP SR,
JOSEPH DiSCALA, ICHAN HOUSE EAST,
ICHAN HOUSE WEST,
ICAHN ENTERPRISES G.P, INC,

                          Defendants.
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF CRF-CLUSTER MODEL PROGRAM,
LLC'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**


                          LEWIS BRISBOIS BISGAARD & SMITH LLP
                          77 Water Street, Suite 2100
                          New York, New York  10005
                          212-232-1300
                          *Attorneys for CRF-Cluster Model Program, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

THE ALLEGATIONS OF THE THIRD AMENDED COMPLAINT........................................... 2

ARGUMENT .................................................................................................... 5

    I.    PLAINTIFF'S CONSTITUTIONAL DUE PROCESS CLAIM DOES NOT LIE AGAINST CRF WHICH IS NOT A STATE ACTOR ........................................ 5

    II.    PLAINTIFF'S CLAIM UNDER THE PUBLIC OFFICERS LAW DOES NOT LIE AGAINST CRF ................................................................................. 7

    III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE III OF THE ADA ... 10

    A.    CRF Does Not "Operate, Own, or Lease" a Place of Public Accommodation .... 10

    B.    Plaintiff Does Not Have Standing to Bring a Claim Under Title III of the ADA 12

    C.    CRF Did Not Discriminate Against Plaintiff and Carried Its Burden to Provide a Reasonable Modification to Accommodate His Alleged Disability .................... 14

    IV.    PLAINTIFF HAS NOT PLEADED ANY VIABLE DISCRIMINATION CLAIMS PURSUANT TO THE FAIR HOUSING ACT .................................................. 15

    A.    Plaintiff Fails to Sufficiently Plead Disparate Treatment ........................................ 16

    B.    Plaintiff Fails to Allege Failure to Accommodate .................................................... 20

    V.    ANY NON-FEDERAL CLAIMS SHOULD BE DISMISSED FOR LACK OF SUPPLEMENTAL JURISDICTION .................................................................. 22

CONCLUSION.................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, 49 Misc. 3d 1027 (Sup. Ct. Queens Co. 2015).................................................................................................. 9

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp.2d 160 (S.D.N.Y. 2006) ............................................................................................................... 13

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)........................................................ 6

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) .............................................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 15, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 15

*Boykin v. KeyCorp.*, 521 F.3d 202 (2d Cir. 2008) ....................................................... 15

*Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88 (2d Cir. 2011)....................... 12

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)............................................. 23

*Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135 (2d Cir. 1994)........................... 13

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000)........................ 15

*Hafer v. Melo*, 502 U.S. 21 (1991) ............................................................................... 6

*Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010)............................................................................ 10

*Harty v. Simon Prop. Grp., Ltd. P'ship*, 428 F. App'x 69, 71 (2d Cir. 2011) ........ 12, 13

*Henrietta D. v. Bloomberg,* 331 F.3d 261 (2d Cir. 2003)............................................ 10

*Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp.3d 396 (S.D.N.Y. 2014) ................ 17

*Hicks v. IBM Corp.*, 44 F. Supp.2d 593 (S.D.N.Y. 1993) ........................................... 19

*House v. Wackenhut Servs.*, 10 Civ. 9476 (CM)(FM), 2012 U.S. Dist. LEXIS 130879 (S.D.N.Y. Aug. 20, 2012) ..................................................................................... 18

*Kitchen v. Phipps Houses Grp. of Cos.*, No. 08-CV-04296 (DC), 2009 WL 290470 (S.D.N.Y. Feb. 5, 2009), *aff'd*, 380 F. App'x 99 (2d Cir. 2010) ................................. 11

*Levin v. Harleston*, 966 F.2d 85 (2d Cir. 1992). ............................................................ 12

*Music Deli & Groceries, Inc. v. IRS*, 781 F. Supp. 992 (S.D.N.Y. 1991) ...................... 23

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ................................................................ 19

*Perry v. Sony Music*, 462 F. Supp.2d 518 (S.D.N.Y. 2006) ......................................... 20

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79 (2d Cir. 2004) ................................ 12

*Puniqtore v. Barbera*, 506 F. App'x 40 (2d Cir. 2012) ................................................. 18

*Reid v. Zackenbaum*, No. 05-CV-1569 (FB), 2005 U.S. Dist. LEXIS 17177 (E.D.N.Y. Aug. 17, 2005) ................................................................................................ 11

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) ................................................................. 5

*Reyes v. Fairfield Props.*, 661 F. Supp.2d 249 (E.D.N.Y. 2009) ........................... 11, 21

*Small v. General Nutrition Cos.*, 388 F. Supp.2d 83 (E.D.N.Y. 2005) ........................ 13

*Spavone v. Transitional Servs. of N.Y. Supportive Hous. Program*, 16 Cv. 1219 (MKB), 2016 U.S. Dist. LEXIS 63005 (E.D.N.Y. May 12, 2016) ............................... 11, 20

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .............................................................. 9

*Staron v. McDonald's Corp.*, 51 F.3d 353 (2d Cir. 1995) ............................................ 14

*Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565 (2d Cir. 2003) ....................... 16, 21

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977) ........... 16

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................................. 6

*Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) ................................. 9

*Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012)...................................................................................................... 17

*Wiltz v. N.Y. Univ.*, No. 19-cv-03406 (GHW) (SDA), 2019 U.S. Dist. LEXIS 220563 (S.D.N.Y. Dec. 23, 2019)........................................................................ 11, 14

*Wood v. Mut. Redevel. Houses, Inc.*, 14 Civ. 07535 (AT)(DCF), 2016 U.S. Dist. LEXIS 51020 (S.D.N.Y. Mar. 31, 2016) ................................................................................ 16

**Statutes**

28 U.S.C. § 1367(c)(3) ........................................................................................................ 22

42 U.S.C. § 12181 .............................................................................................................. 10

42 U.S.C. § 12182 ......................................................................................................... 10, 14

42 U.S.C. § 1983 ............................................................................................................ 5, 6

N.Y. Gen. Bus. Law § 399-ddd ........................................................................................ 8, 9

N.Y. Pub. Off. Law § 94(1)(a) ............................................................................................. 8

**Rules and Regulations**

F.R.Civ.P. 12(b)(1) ............................................................................................................... 1

F.R.Civ.P. 12(b)(6) ............................................................................................................... 1

18 N.Y.C.R.R. 352.35 .......................................................................................................... 4

## PRELIMINARY STATEMENT

Defendant CRF-Cluster Model Program, LLC ("CRF")[1], by its attorneys Lewis Brisbois Bisgaard & Smith LLP, submits this memorandum of law in support of its motion to dismiss the Third Amended Complaint pursuant to F.R.Civ.P. 12(b)(1) and 12(b)(6). Based on CRF's demonstration that Plaintiff's third bite at the pleading apple is as fruitless as his first and second, this action should now be dismissed with prejudice and without leave to replead.

The Third Amended Complaint fails to state a plausible claim on which relief can be granted just as abjectly as the prior two Complaints. Plaintiff's first cause of action, alleging Fourteenth Amendment due process violations, lies against a state actor or a private party acting "under color of state law". CRF is a private entity which is not alleged to have acted jointly with any governmental body with respect to Plaintiff's housing. Plaintiff's second cause of action pursuant to the Public Officers Law cannot stand because that statute does not provide for a private right of action. Plaintiff's third cause of action under Title III of the ADA fails because: (a) CRF does not own, lease or operate a place of "public accommodation", (b) Plaintiff does not have standing to sue because, in light of his having moved out of CRF's premises, the alleged injury will not be continued or repeated; and (c) Plaintiff has not plausibly alleged that CRF has failed to satisfy its statutory obligations. Finally, Plaintiff's fourth and fifth causes of action for race, disability, and familial status discrimination under the Fair Housing Act fail because Plaintiff does not plausibly allege that any of CRF's actions or omissions were motivated by Plaintiff's race, disability or familial status. To the extent Plaintiff alleges that CRF failed to reasonably accommodate his disability, his claim also fails because Plaintiff admits that CRF

---

[1] This motion is made on behalf of only CRF. It is the only defendant which been served with process or appeared herein, notwithstanding the addition of numerous other persons and entities as defendants via the Third Amended Complaint.

complied with its obligations to take "modest, affirmative steps" to accommodate Plaintiff by twice offering him alternative accommodations which he refused to consider for his own reasons.

## THE ALLEGATIONS OF THE THIRD AMENDED COMPLAINT

Plaintiff's factual allegations in the Third Amended Complaint are not systematically laid out, but are scattered around in a disorderly fashion, in-between the various causes of actions. The claims range from due process violations, to breach of privacy, to race, disability and familial status discrimination, to failure to accommodate. The discussion below summarizes Plaintiff's most pertinent allegations .

Plaintiff is a former resident of an apartment provided for by CRF, in which he resided with his wife and two adolescent children. After having "sign[ed] an agreement that gave a blanket release of all information" to the Department of Homeless Services on August 19, 2017, he thereafter "transitioned into the shelter located at 1815 University Ave, APT# 2E, Bronx, New York 10453 on September 23, 2017." Third. Am. Compl. ¶¶ 49, 51. Thereafter, "from 2017 until June of 2019, [Plaintiff] was repeatedly asked for the families [sic] financial statements, social security benefit letters, school records, medications taken by the oldest boy, and medical information on the plaintiff without consent." *Id.* ¶ 55. Allegedly, Ericia Joseph and Jalahni Reddick of CRF asked for those documents. Plaintiff contends that – despite their position as CRF employees who processed housing claims and despite the release admittedly signed by Plaintiff permitting access to his and his family's personal information – those two individuals "had no authority to ask or demand any confidential documents." *Id*. ¶¶ 37, 41. "Starting in February 2019 through June 2019", Mr. Reddick's requests "became more aggressive demanding, and…bullying" such that Plaintiff concluded that "Mr, Reddick had over stepped boundaries, and had taken his supervisory position as an official in a government position." *Id*. ¶

41. Plaintiff fails to furnish any further information or examples of Mr. Reddick's allegedly "aggressive" and "bullying" behavior.

In addition, Plaintiff alleges he was "disturb[ed]" when he observed the superintendent of his building, "using the key pad" and entering an office where (unspecified) "files" were kept "unsecured". *Id*. ¶ 60.  Plaintiff does not aver that the superintendent actually reviewed, or even noticed, the "unsecured files" or that his files were in that office. Plaintiff also felt "uncomfortable" when another CRF employee sent a travel pass via e-mail internally to another CRF employee, who then "printed it out making it public", despite the fact that such actions were taken following Plaintiff's "request" for "a pass to travel from New York to Ohio for housing." *Id*. ¶¶ 67, 70. Again, there is no allegation that anyone outside of CRF ever attained access to the information present on Plaintiff's travel pass, including his name, date of birth, and social security number, or to any other personal information  CRF's action appears to be of concern to Plaintiff solely because "New York has the second highest number of data breach incidents in the country and is sixth per-capita in identity theft complaints, and identity theft by itself cost businesses over $40 billion in 2007." *Id.* ¶ 7.

Further, on January 15, 2018, Plaintiff provided CRF with a letter from a doctor stating that Plaintiff suffered from "osteo arthritis in the hip" and "requesting that the plaintiff move from the fifth floor apartment to a lower floor". *Id*. ¶¶ 80, 81. Following Plaintiff's requests, Mr. Reddick, on behalf of CRF, made a number of recommendations to Plaintiff regarding alternative living options in buildings with lower floor apartments. Plaintiff rejected each of these options due to various reasons, including his refusal to have his "two teens…sleep in the same room" and "to live in an assisted living housing that would create an isolation of teens". *Id*. ¶¶ 122-123. Plaintiff now seeks to holds CRF accountable for millions of dollars in damages for

having "deprived the plaintiff surgery" and for "no longer having insurance in New York [in order] to have the surgery performed by a doctor who was competent and had successful operations in the past". *Id*. ¶¶ 131, 133.

Finally, Plaintiff alleges "discrimination both racially motivated and by disability", as well as familial status discrimination, because he was allegedly "treated differently from others [of unspecified race, disability and familial status] acquiring assistance for temporary shelter." *Id*. ¶ 87. Specifically, Mr. Reddick had allegedly informed Plaintiff that he had stayed at CRF's residence for too long, "when at least 2 latino families and a single latino male" and three other individuals identified as "Miriam Mima Nieves", "Raphael" and "Crystal", all of unspecified race, remained longer in CRF housing. *Id*. ¶¶ 91-95. Plaintiff fails to allege even an approximate number of individuals – including "latino" individuals or individuals with no disabilities or families – who stayed at CRF's premises for shorter periods of time (presumably, this is a much larger number). Plaintiff further concedes that "[b]oth Crystal….and Miriam Mima Nieves….both had children" and "were never told they needed to leave with their children." *Id*. ¶¶ 123, 140. Ultimately, "Plaintiff claims that, by forcing the family to move, [CRF] had alternative motives because of time restraints", while "other families", who "had children most younger", "were never approached, directed and/or required to leave." *Id*. ¶ 100. This allegation ignores that CRF never forced Plaintiff to move. It did no more than begin to address the issue of Plaintiff having stayed longer than permitted under the applicable DHS rules and regulations governing temporary shelter for homeless persons. *See* 18 NYCRR 352.35 (emphasizing the "temporary" nature of the housing assistance and noting that "[a]n individual or family must actively seek housing other than temporary housing, as required by the social services district, and not unreasonably refuse or fail to accept any such housing, including but not limited to,

permanent housing, reunification with family or relocation to other appropriate residential facility. When an individual or family fails to comply with these requirements, the social services district must discontinue temporary housing assistance until the failure ceases, or for 30 days, whichever period is longer.") Rather, the Court can take judicial notice of the prior proceedings herein, which include a Court overseen process pursuant to which Plaintiff – after manifesting a desire to vacate and move his family to Ohio – was permitted to remain in residence until July 2019. *See* ECF Minute Entry Dated 5/14/2019 ("Plaintiff is to stay in his residence until July 31, 2019"); *see also* DE No. 17, Transcript of Conference held on 5/14/2019 before Judge Katherine Polk Failla, pp. 17-20. He could have stayed and fought to retain his residency with CRF; his decision not to do so is fatal to certain of his claims, as demonstrated below.

## ARGUMENT

### I.     PLAINTIFF'S CONSTITUTIONAL DUE PROCESS CLAIM DOES NOT LIE AGAINST CRF WHICH IS NOT A STATE ACTOR

Plaintiff's "First Complaint" is entitled "Case workers woking [sic] beyond their scope of practice" and is purportedly brought pursuant to the Fourteenth Amendment of the U.S. Constitution. In particular, Plaintiff claims that CRF case workers Erica Joseph, and Jalahni Reddicks, acting "under color of state law", violated Plaintiff's due process rights by requesting confidential documents which they "had no authority to ask or demand". Third Am. Compl. ¶¶ 37, 45.

Claims alleging Fourteenth Amendment violations – typically brought under 42 U.S.C. § 1983 which provides for a private right of action – "are only permitted against state actors or those acting under "color of state law."" *Rendell-Baker v. Kohn*, 457 U.S. 830, 835 (1982) (citation omitted). No remedy exists under § 1983 for "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). A

defendant "acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49-50 (1988). A private party has potential liability under the statute only if it willfully participated in joint activity with the state or its agents. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 174 (1970).

Here, this claim does not lie against CRF because it and its employees are not state actors and they are not alleged to have acted jointly with any governmental body with respect to Plaintiff's housing and related issues. Plaintiff's conclusory allegation that "Mr. Reddick had over stepped boundaries, and had taken his supervisory position as an official in a government position" (Third Am. Compl. ¶ 41) is patently insufficient to render him a state actor since it is evident that CRF is private and its employees are not government employees. There is no allegation that Mr. Reddick "participated in joint activity with the state or its agents" (*Adickes*, 398 U.S. at 174). To the contrary, the allegation is that Mr. Reddicks' "power" was "given to him by the higher authorities within the organization" *i.e.,* CRF, a private entity. Third Am. Compl. ¶ 38. Nor is there any allegations that Mr. Reddick was acting on behalf of the state when he allegedly used "aggressive", "demanding", and "bullying" techniques to obtain requisite information from Plaintiff or at any other time. *Id.* ¶ 41.

Plaintiff's Complaint cites an inapposite Supreme Court decision. In *Hafer v. Melo*, 502 U.S. 21 (1991), the Supreme Court ruled that "Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry *a badge of authority of a State and represent it in some capacity*, whether they act in accordance with their authority or misuse it." *Id.* at 28 (emphasis added). On this basis, the Supreme Court held that the Auditor General of

Pennsylvania could be held personally liable for damages for the dismissal of employees from the Pennsylvania Auditor General's Office. Here, neither CRF nor its employees represent the state in any capacity and they have not carried out any allegedly unlawful actions based on putative authority granted by the government

Additionally, Plaintiff's substantive grievance about improper access to his records is without factual foundation. The Court previously sought CRF's explanation of the legal justification for its conduct, which CRF duly provided [DE 19]. As explained, CRF is obligated to obtain and retain certain personal information, pursuant to regulations promulgated by both the New York State Department of Social Services and the DHS, in order to make a proper assessment regarding Plaintiff's eligibility for housing, and carry out its obligations both towards the Plaintiff's family and to the other residents in the facility in ensuring suitable housing. *Id*. That showing has never been rebutted. It remains the case that CRF was authorized and required to obtain the information and it never misused same.[2]

## II.     PLAINTIFF'S CLAIM UNDER THE PUBLIC OFFICERS LAW DOES NOT LIE AGAINST CRF

Plaintiff's "Second Complaint" alleges "unauthorized collection of personal data" in violation of the Public Officers Law. The factual predicate for this count closely resembles Plaintiff's first claim and alleges that caseworker, Erica Joseph, "had no right to request or demand…social security cards, birth certificates, marriage certificates, [or] drivers licenses" from Plaintiff. Third Am. Compl. ¶ 50. In addition, CRF allegedly "repeatedly asked for the

---

[2]   Plaintiff's citation to the New York State Education Law as a basis for questioning whether CRF's employee Jalahni Reddick acted as an unlicensed social worker (¶ 40) avails him nothing. The Education Law does not give rise to a private right of action and even assuming arguendo that Mr. Reddick was not a licensed social worker, it is not per se improper for persons who lack that status to have access to such information, and his status has no bearing on whether CRF improperly accessed and utilized Plaintiff's personal information.

families financial statements, social security award letters [sic], school records, medications taken by the oldest boy, and medical information on the plaintiff without consent". *Id.* ¶ 55.

Dismissal is required because the Public Officers Law does not apply to private entities such as CRF. That statute provides, *inter alia*, that "[e]ach agency shall…maintain in its records only such personal information which is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or executive order…" N.Y. Pub. Off. Law § 94(1)(a). The term "agency" is defined as "any state board, bureau, committee, commission, council, department, public authority, public benefit corporation, division, office or any other governmental entity performing a governmental or proprietary function for the state of New York". *Id.* § 92(1). Because, as explained above, CRF is a private entity, not a governmental body, the Public Officers Law is inapplicable.

Plaintiff alleges further that his personal information *could have been* subject to unauthorized access, by virtue of the building's superintendent's entering of the office where "files" were kept, and during an instance where two CRF employees internally e-mailed and printed out a travel pass requested by Plaintiff, which contained his family name, date of birth, and social security numbers. Third Am. Compl. ¶¶ 59, 60, 67, 70. Plaintiff contends that CRf violated the New York Social Security Number Protection Law, N.Y. Gen. Bus. Law § 399-ddd(2), which prohibits an entity from, *inter alia*, "[i]ntentionally communicat[ing] to the general public or otherwise mak[ing] available to the general public in any manner an individual's social security account number" and "[r]equir[ing] an individual to transmit his or her social security account number over the internet, unless the connection is secure…"[3]

---

[3] This statute provides for certain carve-outs when "the collection, use, or release of a social security account number" is used for, *inter alia*, "internal verification", "fraud investigation", "administrative purposes" or "for a legitimate or necessary purpose related to the conduct of [a]

However, as Plaintiff's Complaint acknowledges, there is no private right of action under this statute and enforcement proceedings may only be commenced by the Attorney General. *Id.* § 399-ddd(7); Third Am. Compl. ¶ 73. *See also Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, 49 Misc. 3d 1027, 1038 (Sup. Ct. Queens Co. 2015) (dismissing cause of action for negligence per se based on § 399-ddd, because "the provisions of this statute has been entrusted to the Attorney General [and thus] no private right of action exists"). Accordingly, any claim, if any, pursuant to § 399-ddd should be dismissed.

Nor can Plaintiff's claims of unauthorized access to his personal data form the basis for a common law claim against CRF, on the basis of the speculative harm that could have arisen if such data fell into the wrong hands, by virtue of "New York [having] the second highest number of data breach incidents in the country…." Third Am. Compl. ¶ 7. Plaintiff does not allege that any data breach incident occurred which affected him personally, or that his information was misused in a way that resulted in some tangible harm. The perceived risk of future harm by potential misuse of private information does not allege an "injury in fact" and is insufficient to give Plaintiff standing under Article III of the United States Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). *See also Whalen v. Michaels Stores, Inc.,* 689 F. App'x 89, 89 (2d Cir. 2017) (affirming dismissal of plaintiff's claims for lack of standing, and concluding that Plaintiff "had failed to allege a cognizable injury from the exposure of her credit card information following a data breach at one of Michaels' stores"); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 U.S. Dist. LEXIS 71996, at *6, 26 (S.D.N.Y. June 25,

---

business or trade". N.Y. Gen. Bus. Law §§ 399-ddd(3) and (4). It is patent that CRF was entrusted with Plaintiff's information for such legitimate reasons given the nature of the relationship and there is no basis to contend that CRF ever misused the information.

2010) (dismissing claims based on plaintiffs' "increased fear that their personal information may be used improperly" due to lack of standing, holding that "[n]one of the named plaintiffs has alleged … that their alleged injuries are more than 'speculative' or 'hypothetical'"). This Court lacks subject matter jurisdiction based on Plaintiff's lack of standing.

### III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE III OF THE ADA

Plaintiff's "Third Complaint" is brought under Title III of the ADA for "not making reasonable modifications to policies and procedures or accomidations [sic]". Specifically, Plaintiff alleges that CRF failed to accommodate his request to be moved to a lower floor within the building, due to suffering from osteo arthritis. Third Am. Compl. ¶ 81.

To state a claim under Title III of the ADA, a plaintiff must allege (1) that he is a "qualified individual" with a disability; (2) that the defendant is subject to the ADA; and (3) that the plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise  discriminated against by defendants, by reason of [his] disability." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2d Cir. 2003).

This count fails for three reasons: (1) CRF is not a place of public accommodation and, thus, it is not subject to the ADA, (2) Plaintiff does not have standing to sue, and (3) CRF did not deny Plaintiff the opportunity to benefit from its services.

### A. CRF Does Not "Operate, Own, or Lease" a Place of Public Accommodation

Tittle III of the ADA affords certain protections to disabled individuals with respect to entities that "operate, own, or lease" a place of public accommodation. *See* 42 U.S.C. § 12182. "Private entities are considered public accommodations…if the operations of such entities affect commerce". 42 U.S.C. § 12181(7). Section 12181(1) defines "commerce" as "travel, trade,

traffic, commerce, transportation, or communication" among different states, between any state and a foreign country, or "between the same state but through another State or foreign country."

It is well-established that private residential facilities do not fall within the meaning of "public accommodation". *Kitchen v. Phipps Houses Grp. of Cos.*, No. 08-CV-04296 (DC), 2009 WL 290470, at *2 n.3 (S.D.N.Y. Feb. 5, 2009), *aff'd*, 380 F. App'x 99 (2d Cir. 2010); *Wiltz v. N.Y. Univ.*, No. 19-cv-03406 (GHW) (SDA), 2019 U.S. Dist. LEXIS 220563, at *22 (S.D.N.Y. Dec. 23, 2019).

*Spavone v. Transitional Servs. of N.Y. Supportive Hous. Program*, No. 16-CV-1219 (MKB), 2016 U.S. Dist. LEXIS 63005 (E.D.N.Y. May 12, 2016) is instructive. In that case, plaintiff, who lived in an apartment owned by the defendant non-profit mental health agency which provided housing programs to disabled individuals using federal and local funding, alleged failure to accommodate in violation of Title III. The Court dismissed the claim, holding "[b]ecause Plaintiff's place of residence, even if publically subsidized, is not a public accommodation subject to the ADA. . ." *Id.* at *19-20. *See also Reyes v. Fairfield Props.*, 661 F. Supp.2d 249, 264 n.5 (E.D.N.Y. 2009) ("receipt of Section 8 housing vouchers is an insufficient basis upon which to deem the premises -- a private, residential apartment complex - a place of public accommodation"); *Reid v. Zackenbaum*, No. 05-CV-1569 (FB), 2005 U.S. Dist. LEXIS 17177, at *11-13 (E.D.N.Y. Aug. 17, 2005) ("[b]ecause [plaintiff] is alleging discrimination in connection with a place of residence, he fails to state a claim that is subject to the ADA under the public accommodation provision of that act").

Similarly here, CRF, an entity that contacts with DHS to provide private housing accommodation to homeless individuals, does not operate a place of "public accommodation" subject to Title III. That CRF may have received federal or state funding or "have used the

policies and procedures of the Department of Homeless Services…since 2004" (Third Am. Compl. ¶ 44), does not transform CRF into a public entity or change the nature of CRF's services, which are to provide private housing for families in need.

### B. Plaintiff Does Not Have Standing to Bring a Claim Under Title III of the ADA

Plaintiff makes a claim of "Seven Million Dollars to be split five ways", due to Defendants' alleged failure to provide "reasonable accommodations" pursuant to Title III. Third Am. Compl. ¶ 130. Even assuming that CRF was determined to be a place of public accommodation, Plaintiff cannot recover money damages under this statute and does not otherwise have standing to bring a claim under Title III of the ADA.

It is axiomatic that "[a] private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (same). To establish standing in an ADA Title III suit seeking injunctive relief based upon the denial of access to a public accommodation, a plaintiff must "(1) allege past injury under the ADA; (2) show that it is reasonable to infer from his or her complaint that this discriminatory treatment will continue; and (3) show that it is also reasonable to infer, based on the past frequency of his or her visits and the proximity of the public accommodation to his or her home, that he or she intends to return to the public accommodation in the future." *Harty v. Simon Prop. Grp., Ltd. P'ship*, 428 F. App'x 69, 71 (2d Cir. 2011) (internal citations omitted). "Allegations of past injury alone do not suffice to establish an injury in fact for a plaintiff seeking declaratory or injunctive relief." *Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992). Instead, that plaintiff must show a "real and immediate threat that the injury will be continued or

repeated." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp.2d 160, 167 (S.D.N.Y. 2006).

In the Title III ADA context, a plaintiff demonstrates a threat that the injury will be repeated, and therefore has standing to seek injunctive relief, if he shows "a plausible intention or desire to return to the place" of injury. *Id.* at 168. *Accord  Small v. General Nutrition Cos.*, 388 F. Supp.2d 83, 86 (E.D.N.Y. 2005) (To establish standing, plaintiff must demonstrate that, when he filed suit, he plausibly intended to return to the defendant's mall). When, as here, injunctive relief is not available, an ADA Title III claim is moot. *See Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (holding that a former medical student's ADA claim against a medical school was moot, since he "now graduated from medical school, received his M.D., and is participating in (or has already completed) a pediatrics residency program").

Here, it is undisputed that Plaintiff is no longer a resident at CRF's premises as he permanently moved to Ohio while this action is pending. Third Am. Compl. ¶ 133. There is no allegation in the Complaint that he intends to return to his former residence, or that he is even considering applying for housing accommodation with CRF in the future. Under the circumstances, there is no possible "reasonable inference" that Plaintiff intends to return. *Harty,* 428 F. App'x 69, 71. Moreover, he could not simply return based on his own predilections; DHS would have to assign him anew to CRF assuming he qualified for housing assistance upon a return to New York. It is sheer speculation that such a return would ever transpire.

Whatever discriminatory treatment is alleged to have occurred in the past, Plaintiff has not – and cannot – plausibly allege that such treatment will be repeated or continued in the future. Accordingly, Plaintiff does not have standing to bring a claim under Title III of the ADA.

*Wiltz v. N.Y. Univ.*, No. 19-cv-03406 (GHW) (SDA), 2019 U.S. Dist. LEXIS 220563, at *47 (S.D.N.Y. Dec. 23, 2019) (former resident lacked standing to seek injunctive relief because he "has not shown a real or immediate threat that he will be wronged again by Defendants").

### C. CRF Did Not Discriminate Against Plaintiff and Carried Its Burden to Provide a Reasonable Modification to Accommodate His Alleged Disability

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation…." 42 U.S.C. § 12182. Discrimination includes "a failure to make *reasonable modifications* in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…" 42 U.S.C.S. § 12182(b)(2)(A)(ii) (emphasis added). A modification is not "reasonable" if it either imposes "undue financial and administrative burdens or requires a fundamental alteration in the nature of the program". *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995) (internal citations omitted).

Here, it is clear that CRF did not deny Plaintiff the opportunity to benefit from CRF's services; to the contrary, Plaintiff admittedly resided in an apartment provided by CRF for an extended time period before moving out. In addition, Plaintiff has judicially admitted that CRF attempted to accommodate his alleged disability by offering him other apartment options in other complexes, which Plaintiff refused. Plaintiff's stated reasons for such refusal were that (1) "[t]he two teens could not sleep in the same room especially with one child being under the age of 18"; and (2) "another option to live in an assisted living housing….would create an isolation of teens living in a assisted living area." Third Am. Compl. ¶¶ 122-123.

As shown above, Title III does not impose an obligation on CRF to accommodate a disabled individual *by any means possible* in order to ensure that they enjoy CRF's facilities to the same extent as a non-disabled individual; instead, CRF (to the extent determined to be covered by Title III of the ADA), would at most be required to make *reasonable modifications* that do not impose undue financial and administrative burdens. While this is necessarily a fact-intensive inquiry, Plaintiff cannot possibly argue that CRF failed in its obligations, solely because it failed to somehow magically house Plaintiff in a hypothetically available perfect home in which each member of his family could have separate bedrooms. Moreover, Plaintiff does not suggest any other alternative ways in which CRF could have offered him a reasonable accommodation, without CRF having to sustain undue financial or administrative burdens.

## IV.   PLAINTIFF HAS NOT PLEADED ANY VIABLE DISCRIMINATION CLAIMS PURSUANT TO THE FAIR HOUSING ACT

Plaintiff's fourth and fifth "Complaints" purport to allege race, disability and familial status discrimination under the Fair Housing Act ("FHA"). The FHA provides, *inter alia*, that it shall be unlawful to refuse to sell or rent a dwelling or "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling," because of, *inter alia*, an individual's race, familial status, or disability. 42 U.S.C.S. §§ 3604(a), (b), and (f). A claim of housing discrimination under the FHA must be pleaded in accord with the recognized pleading standards applied by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See Boykin v. KeyCorp.*, 521 F.3d 202 (2d Cir. 2008). The complaint must sufficiently allege an adverse action by the defendant attributable to discriminatory animus. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

A plaintiff seeking recovery under the FHA can establish discrimination under three theories: (1) disparate treatment; (2) disparate impact; or (3) where disability discrimination is alleged, failure to make a reasonable accommodation. *Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir. 2003). Plaintiff alleges only disparate treatment and failure to accommodate, but his failure to plead a plausible basis for either claim requires dismissal of his fourth and fifth causes of action.

### A.       Plaintiff Fails to Sufficiently Plead Disparate Treatment

To establish disparate treatment, it is not enough to merely allege that plaintiff was subject to what he deemed to be unfair housing conditions. Instead, a plaintiff must demonstrate that a "discriminatory purpose was a motivating factor" in the defendant's action. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270 (1977).

Plaintiff alleges that certain individuals and families were "treated differently from others acquiring assistance for temporary shelter at 1815 and 1805 University Ave Bronx, NY 10453", by being allowed to stay at those locations for a longer period of time than Plaintiff and his family. Third Am. Compl. ¶ 87. Even assuming arguendo that CRF forced Plaintiff to vacate, which is patently not the case, Plaintiff does not sufficiently allege that CRF was motivated by Plaintiff's race, disability or familial status.[4]

Plaintiff's disparate treatment claim essentially rests on the conclusory allegation that "defendants were trying to be selective by weeding out those on disability, families with younger

---

[4] The Complaint actually does not identify Plaintiff's race or allege that CRF knew his Plaintiff's race. Further, while the Complaint refers to Plaintiff's "two teens" (Third Am. Compl. ¶ 122), it does not otherwise specify Plaintiff's familial status. This pleading failure should also doom the claims of discrimination based on race and familial status. *Wood v. Mut. Redevel. Houses, Inc*., 14 Civ. 07535 (AT)(DCF), 2016 U.S. Dist. LEXIS 51020, at *39 (S.D.N.Y. Mar. 31, 2016).

children, and african americans, and to include caucasian families, which created a familial status housing discrimination case." *Id.* ¶ 141. The Complaint lacks sufficient supporting allegations that support this extraordinary contention. There is no evidence that CRF did not faithfully and neutrally fulfill its obligations to all homeless families assigned to its facilities. Such conclusory allegations without identification of any specific information that supplies the basis for the claimed belief do not satisfy the controlling *Iqbal/Twombly* pleading standard. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp.3d 396, 412-413 (S.D.N.Y. 2014), *citing Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 U.S. Dist. LEXIS 28723, at *7 (S.D.N.Y. Mar. 1, 2012) (dismissing discrimination claim alleging disparate treatment on "information and belief" which failed to identify "'information' that w[ould] render these statements more than a speculative claim"). In fact, the Complaint contains judicial admissions that directly contradict Plaintiff's conclusory statements.

Specifically, Plaintiff identifies three individuals who allegedly were allowed to stay longer than Plaintiff in CRF housing : (1) "a next door neighbor…Miriam Mima Nieves…[who] was living in her unit prior to the plaintiff's family moving in, and in fact is still residing" at the unit 5D 1815 University Ave, Bronx, NY 10453; (2) "an individual by the name of Raphael… [who] resided at 1805 University Ave prior to the plaintiff's arrival, and also continues to live there"; and (3) "Crystal that was living on the 1805 side, and was still living there after the plaintiff moved out." *Id.* ¶¶ 93-95.

Plaintiff does not identify these three individuals' race. One might infer that the first two are Hispanic, but Plaintiff does not allege that CRF favored Hispanic residents. And while no allegation is made regarding Crystal or Miriam Mima Nieves' disability status, Plaintiff does allege that "[b]oth Crystal….and Miriam Mima Nieves….had children" and "were never told

they needed to leave with their children." *Id*. ¶¶ 123, 140. This averment contradicts Plaintiff's concocted and unsupported claim that Defendants were trying to "weed out", *inter alia*, "families with younger children". *Id.* ¶ 141.

Similarly, while the Complaint contains no allegation regarding Raphael's familial status, it does allege that "Raphael was moved from 1805 University to 1815 University Ave, was moved then had surgery" [sic] (*id.* ¶ 94). Assuming Plaintiff suggests that Raphael suffered from a disability, the judicial admission that CRF accommodated him undermines the claim that CRF was trying to "weed out" individuals with disabilities.

Finally, Plaintiff alleges that CRF "created a false light when at least 2 latino families and a single latino male were there longer and still remaining upon defendants departure" [sic]. *Id.* ¶ 92. To the extent this is comprehensible, it is an admission that undermines the allegation that Defendants were creating policies that specifically favored "caucasian families". *Id.* ¶ 141. The Complaint also lacks any specific allegations of fact that would give rise to an inference of discriminatory intent in favor of Hispanics and against African-Americans.

The Court should ignore Plaintiff's conclusory averments as to CRF's allegedly discriminatory motivation, which are not entitled to the presumption of truth. *Iqbal*, 566 U.S. at 678; *Puniqtore v. Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012) (summary order). It is well settled that a plaintiff alleging discrimination must come forward with something more than a simplistic, conclusory statement to the effect that, because I am a member of a protected category, the adverse action to which I was subjected had to have been attributable to that characteristic. But that is essentially all Plaintiff can supply.[5]

---

[5] *See, House v. Wackenhut Servs.*, 10 Civ. 9476 (CM)(FM), 2012 U.S. Dist. LEXIS 130879, at *2-3 (S.D.N.Y. Aug. 20, 2012) ("Unfortunately, "like entirely too many employment

It is notable that Plaintiff actually proffers a legitimate, non-discriminatory basis for CRF's alleged actions, as follows: "Plaintiff claims that by forcing the family to move, [CRF] had alternative motives because of time restraints", while "other families", who "had children most younger", "were never approached, directed and/or required to leave." *Id*. ¶ 100. By this statement, Plaintiff implicitly admits that his race, disability and familial status had nothing to do with CRF's decisions affecting his accommodation. While the Complaint may reference a limited number of individuals who may have remained longer at CRF's various premises, Plaintiff implicitly acknowledges that many more individuals stayed for shorter periods.

A complaint that sets forth "other possible motives" for the alleged conduct, and does not contain specific facts supporting a claim of racial animus, "contradicts a claim of racial discrimination." *Hicks v. IBM Corp.*, 44 F. Supp.2d 593, 598 (S.D.N.Y. 1993).

Conspicuously, Plaintiff does not allege that any agent of CRF made discriminatory comments to or about Plaintiff or other members of his protected classes or identify any comparable conduct that might give rise to an inference of discrimination. (The fact that many of CRF's staffers share Plaintiff's race suggests that any such allegation predicated on his race would be fanciful.) Plaintiff fails to sufficiently plead the "sine qua non" of a discrimination claim; *viz*, that any alleged adverse action occurred because of a discriminatory animus predicated on a protected characteristic. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

In sum, because the Complaint herein lacks any competent averments in support of the conclusory contention that CRF discriminated against him on the basis of his race, familial

---

discrimination complaints seen in this Court, [the] Complaint does nothing more than allege the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one of more protected categories); therefore it must have happened because I am (fill in the blank with the applicable protected category/ies").

status, or disability; he has not pleaded a sufficient basis to proceed with his putative FHA claim for relief. *See also, e.g. Perry v. Sony Music*, 462 F. Supp.2d 518, 520 (S.D.N.Y. 2006) (granting motion to dismiss complaint which lacked a "sufficiently specific factual allegation of racial discrimination" and relied instead on a "conclusory assertion"); *Spavone v. Transitional Servs. of N.Y. Supportive Hous. Program*, 16 Cv. 1219 (MKB), 2016 U.S. Dist. LEXIS 63005, at *13-14 (E.D.N.Y. May 12, 2016) (dismissing FHA disability and race discrimination complaint because plaintiff failed to allege any facts showing intentional discrimination in respect of housing based on plaintiff's disability or race).

Moreover, since Plaintiff voluntarily vacated his apartment under circumstances overseen by the Court, he has no basis to claim that he was harmed by any putative effort by CRF to end his residency. *See* ECF Minute Entry Dated 5/14/2019 ("Plaintiff is to stay in his residence until July 31, 2019"); *see also* DE No. 17, Transcript of Conference held on 5/14/2019 before Judge Katherine Polk Failla, pp. 17-20. In fact, he has not been damaged at all by the putative discrimination, which provides yet another reason for dismissal under Rule 12(b)(6).[6]

### B.    Plaintiff Fails to Allege Failure to Accommodate

Plaintiff also fails to state a FHA claim for failure to accommodate. Under the FHA, it is unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604 (f)(3)(B) (emphasis added). To trigger such provision, Plaintiff "must show that, but for the accommodation, [he] likely will be denied an equal

---

[6]  Plaintiff's suggestion that CRF may be applying eligibility criteria to screen out people with disabilities" or imposing stricter terms on disabled persons (¶ 113) is baseless but also irrelevant since CRF obviously did not screen out Plaintiff or his family given their lengthy residency and Plaintiff does not identify any stricter terms to which he was supposedly subjected.

opportunity to enjoy the housing of [his] choice." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003).

"To prevail on a reasonable accommodation claim, plaintiffs must first provide the [defendant] an opportunity to accommodate them through the entity's established procedures..." *Tsombanidis,* 352 F.3d at 578. A defendant then has an obligation to "incur reasonable costs and take *modest, affirmative steps* to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden." *Id.* (emphasis added).

Here, Plaintiff alleges that, due to problems with his hip, he had difficulty accessing his fifth floor apartment. As explained above, Plaintiff's judicial admissions undermine this claim as he pleads that CRF provided him with other apartment options, which he refused to consider. Third Am. Compl. ¶¶ 122-123. Accordingly, it is established that CRF was prepared to take the appropriate modest, affirmative steps to accommodate Plaintiff, and that – because Plaintiff did not give CRF the opportunity to accommodate him through its established procedures – he has no basis to claim CRF violated the FHA.

Further, it is obscure what other modest, affirmative steps CRF could have taken to reasonably accommodate Plaintiff's disability. To the extent Plaintiff requested structural modifications in the building to access his apartment, the FHA does not require such modifications of existing facilities. *Reyes v. Fairfield Props*., 661 F. Supp.2d 249, 260 (E.D.N.Y. 2009) ("to the extent that plaintiffs' claim of disability discrimination hinges on defendants" alleged failure to reconstruct or renovate certain areas in a fashion that accommodated plaintiff's disability, such claims are not actionable under the reasonable accommodations

provision of the FHAA.") And CRF does not own the buildings in which it secures housing for the residents in any event and it could not effectuate such changes.

As explained above, it is not reasonable for Plaintiff, a homeless individual who came to CRF for shelter, to demand that his family be housed in an apartment of his choice, at a preferred location whereby each one of his children have a separate bedroom. Nor would it be reasonable for Plaintiff to demand that other families in need be dislocated from their apartments, just so Plaintiff could obtain such an accommodation, even assuming that any apartments meeting his requirements existed. Plaintiff cannot predicate an FHA claim on the failure by the defendant to provide an imaginary perfect residence, and he certainly has not pleaded a valid claim given his failure to plead facts giving rise to an inference of discriminatory intent or animus.[7]

## V.   ANY NON-FEDERAL CLAIMS SHOULD BE DISMISSED FOR LACK OF SUPPLEMENTAL JURISDICTION

While Plaintiff does not plead any claims under the New York State Human Rights Law and the New York City Human Rights Law as separate claims for relief, the Complaint does reference these statutes.

Assuming this Court dismisses Plaintiff's federal claims, it need not assess the merits of Plaintiff's state and city claims and it should instead dismiss. Pursuant to 28 U.S.C. § 1367(c)(3), the Court has the discretion to decline to exercise supplemental jurisdiction over state claims after the dismissal of all federal claims. Where all federal-law claims are eliminated before trial, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial

---

[7]  The Complaint cites a stipulation of settlement in a class action against DHS brought by a class of disabled homeless persons. Third Am. Compl. ¶ 3. DHS's agreement to provide certain accommodations to members of the class has no bearing on whether CRF acted unlawfully. If Plaintiff contends that DHS has failed to comply with its commitments in that case, he is free to bring that to the attention of the judge presiding over that case. But CRF cannot be faulted for any supposed transgressions of DHS by which it is not bound. *See Butler v. City of New York*, 15-CV-3783, DE 67.

economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988). *See also Clement v United Homes, LLC*, 914 F. Supp.2d 362, 377 (E.D.N.Y. 2012) (declining to exercise supplemental jurisdiction over state law claim where federal claims pursuant to the FHA and the Civil Rights Act of 1866 were dismissed).

## CONCLUSION

For the reasons set forth above, CRF requests that the Court grant its motion to dismiss the Third Amended Complaint with prejudice and without leave to re-plead. It is evident that any repleading would be futile since Plaintiff has no conceivable basis to assert any cognizable claim. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Music Deli & Groceries, Inc. v. IRS*, 781 F. Supp. 992 (S.D.N.Y. 1991).

Dated: New York, New York
January 20, 2020

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

/s/ Peter T. Shapiro
Peter T. Shapiro, Esq.
*Attorneys for Defendant CRF-Cluster Model Program, LLC*
77 Water Street, Suite 2100
New York, New York  10005
212-232-1300
peter.shapiro@lewisbrisbois.com

## <u>CERTIFICATE OF SERVICE</u>

Peter T. Shapiro, an attorney duly admitted to practice before this Court, certifies that on January 20, 2020, he caused to be served and filed via ECF the Memorandum of Law.

/s/ Peter T. Shapiro
_____
Peter T. Shapiro
