UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER THOMPSON,

                          Plaintiff,

              -v.-

CRF-CLUSTER MODEL PROGRAM, LLC,

                          Defendant.

19 Civ. 1360 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Peter Thompson formerly resided in an apartment provided by

Defendant CRF-Cluster Model Program, LLC, a private entity associated with

the Children's Rescue Fund that provides housing to homeless families.

Plaintiff claims that, while he resided in the apartment, Defendant demanded

that he provide sensitive personal information; failed to take adequate

safeguards to protect that information; discriminated against Plaintiff due to

his race, disability, and familial status; and failed to provide Plaintiff with a

reasonable accommodation that he needed due to his disability.  In response,

Plaintiff, proceeding *pro se*, brings this action.  The Third Amended Complaint,

the operative pleading in this case, asserts claims under: (i) 42 U.S.C. § 1983;

(ii) § 7704 of the New York State Education Law, N.Y. Educ. Law § 7704 (the

"Education Law"); (iii) the New York State Personal Privacy Protection Law, N.Y.

Pub. Off. Law §§ 91-99 (the "PPPL"); (iv) the New York State Social Security

Number Protection Law, N.Y. Gen. Bus. Law § 399-ddd (the "SSN Protection

Law"); (v) Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§

12181-12189 (the "ADA"); (vi) the Fair Housing Act, 42 U.S.C. § 3604 (the

"FHA"); (vii) the New York State Human Rights Law, N.Y. Exec. Law §§ 290-97 (the "NYSHRL"); (viii) the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 to 8-131 (the "NYCHRL"); and (ix) § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Before the Court now is Defendant's motion to dismiss the first eight of these nine causes of action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For the reasons set forth in the remainder of this Opinion, Defendant's motion to dismiss is granted in part and denied in part.  Plaintiff's claims brought under the Education Law, the PPPL, the SSN Protection Law, and the ADA are dismissed.  Plaintiff's claims brought under § 1983, the FHA, the NYSHRL, the NYCHRL, and the Rehabilitation Act survive.

## BACKGROUND[2]

### A.    Factual Background

Plaintiff is a Black man and the father of two adolescent children.  (TAC ¶¶ 121-22, 141-42, 146).  For a period of time between 2017 and 2019,

---

[1]    The Court understands the Third Amended Complaint ("TAC" (Dkt. #41)) to raise a claim pursuant to § 504 of the Rehabilitation Act.  (TAC ¶¶ 29, 32).  Defendant does not address the viability of this claim and does not present any arguments in favor of its dismissal.  (*See generally* Def. Br.).  The Court acknowledges that (i) Plaintiff's only allegation to suggest that Defendant receives federal financial assistance — a necessary element of a § 504 claim — is an assertion that Defendant is exempt from federal taxes pursuant to 26 U.S.C. § 501(c)(3) (Pl. Opp. 12), and (ii) courts are divided as to whether such tax-exempt status constitutes federal financial assistance.  *Compare Bachman* v. *Am. Soc. of Clinical Pathologists*, 577 F. Supp. 1257, 1264 (D.N.J. 1983) ("I conclude that the Rehabilitation Act was not intended to cover tax-exempt institutions absent any further affirmative federal financial assistance."), *with McGlotten* v. *Connally*, 338 F. Supp. 448, 462 (D.D.C. 1972) (finding that tax exempt status was a federal subsidy).  Because Defendant has not sought to dismiss Plaintiff's Rehabilitation Act claim, the Court need not address this issue here.

[2]    This Opinion draws its facts from Plaintiff's Third Amended Complaint, the well-pleaded allegations of which are taken as true for purposes of this motion.

Plaintiff and his family were homeless.  (*See generally id.*).  On August 19, 2017, Plaintiff signed an agreement that gave a "blanket release of all information" to the New York City Department of Homeless Services ("DHS").  (*Id.* at ¶ 51).  On September 23, 2017, Plaintiff and his family began to live in an apartment (the "Apartment") in a building in the Bronx (the "Building"), which apartment was provided as temporary housing by Defendant.  (*Id.* at ¶ 49).

From September 2017 through June 2019, Defendant's employees repeatedly asked Plaintiff to provide certain private information, including his family's financial statements, social security award letters, school records, and medical records.  (TAC ¶ 55).  Plaintiff alleges that those employees had no right to ask him to provide this private information.  (*Id.* at ¶¶ 37, 41).  From February 2019 to June 2019, Defendant's employees' requests for these documents became more aggressive and took on a bullying tone.  (*Id.* at ¶ 41).  Plaintiff also grew concerned about Defendant's security measures with respect to this information; on several occasions, Plaintiff saw the superintendent of the Building — who was not employed by Defendant — enter an office that Defendant used to store unsecured files.  (*Id.* at ¶¶ 59-62).[3]

---

For convenience, the Court refers to Defendant's Memorandum of Law in Support of Its Motion to Dismiss as "Def. Br." (Dkt. #47); Plaintiff's Memorandum of Law in Opposition to the Motion as "Pl. Opp." (Dkt. #48); and Defendant's Reply Memorandum of Law in Support of Its Motion as "Def. Reply" (Dkt. #49).

[3]     As a further example, in June 2019, Plaintiff requested a pass to travel from New York to Ohio to look for housing.  (TAC ¶ 67).  Defendant's employee approved a travel pass, a document that contained the names, social security numbers, and dates of birth of Plaintiff's family.  (*Id.* at ¶ 70).  Defendant's employee then sent the travel pass via unsecured email, printed it out, and instructed Plaintiff to leave a copy of the travel

3

On January 15, 2018, Plaintiff provided Defendant with a letter stating that he suffered from osteoarthritis in the hip and requesting that Plaintiff move from his fifth-floor apartment to an apartment on a lower floor.  (TAC ¶¶ 80-81).  Defendant did not immediately address Plaintiff's request.  (*Id.* at ¶ 82).  Eventually, Defendant offered to move Plaintiff to a one-bedroom apartment on the third floor of the Building; Plaintiff rejected the offer, stating that his teenage children could not share a bedroom.  (*Id.* at ¶ 122).  Defendant then offered Plaintiff the option of moving to assisted living housing; Plaintiff rejected the offer, stating that such a move would isolate his teenage children.  (*Id.* at ¶ 123).

In March 2019, Plaintiff was told by Defendant's employee that he needed to move out of the Apartment "yesterday," and that Plaintiff and his family had been staying in Defendant's temporary housing longer than any other occupant.  (TAC ¶¶ 89-90).  Thereafter, Defendant began insisting that Plaintiff's entire family attend all meetings that Plaintiff had previously been required to attend on his own, despite the fact that his children were in school during the day.  (*Id.* at ¶ 91).

Plaintiff alleges that he later learned that three Latino occupants of Defendant's temporary housing had in fact been living there longer than he had: (i) Miriam Nieves; (ii) "Raphael"; and (iii) "Crystal."  (TAC ¶¶ 92-95).  Crystal, in particular, informed Plaintiff that she had never been told to leave

---

pass in the Apartment, to ensure that DHS would not try to move him out while he was traveling.  (*Id.* at ¶¶ 67-69).

Defendant's housing. (*Id.* at ¶ 98). Like Plaintiff, Miriam and Crystal had children who lived with them in Defendant's housing. (*Id.* at ¶¶ 92, 123). Plaintiff came to believe that individuals living in Defendant's housing who were receiving supplemental disability benefits were being pressured to move out, while those who were working were not being pressured to move. (*Id.* at ¶ 105). Plaintiff also claims awareness of numerous other instances in which Defendant did not require all members of a family living in temporary housing to attend meetings. (*Id.* at ¶ 96).

## B.    Procedural Background

Plaintiff initiated this suit on February 12, 2019, by filing a Complaint that named as defendants CRF-Cluster Model Program, LLC; Yolanda Roberts, the Executive Director of CRF-Cluster Model Program, LLC; and Steven Banks, the Commissioner of the New York City Human Resources Administration. (Dkt. #2). On March 5, 2019, Plaintiff filed an Amended Complaint, removing Roberts and Banks as defendants. (Dkt. #3). Plaintiff then filed a motion for a preliminary injunction on April 19, 2019, seeking to stop the sole remaining defendant, CRF-Cluster Model Program, LLC, from exerting pressure on him to provide confidential information and to move out of the Apartment. (Dkt. #8). The Court held a conference with the parties on May 14, 2019, in which Plaintiff stated that he wished to: (i) be permitted to stay in the Apartment through July 31, 2019; and (ii) learn Defendant's basis for requesting certain private information from him. (*See generally* Dkt. #17 (transcript)). Plaintiff agreed that he would withdraw his suit against Defendant and refrain from

bringing further claims against it if two conditions were met: (i) he were to be permitted to remain in the Apartment through July 31, 2019; and (ii) Defendant were to provide its basis for requesting private information from him by June 21, 2019.  (*Id.* at 36-37).  In light of this, the Court directed Defendant to provide by June 21, 2019, letters advising whether it would stipulate to allow Plaintiff to remain in the Apartment through July 31, 2019, and describing Defendant's basis for requesting Plaintiff's confidential information.  (*Id.*).  The Court stayed Defendant's obligation to answer the Complaint through July 31, 2019.  (*Id.*).

On May 21, 2019, Defendant provided a letter stating that the decision regarding whether Plaintiff would be asked to leave the Apartment before July 31, 2020, rested with DHS, not Defendant.  (Dkt. #16).  On June 21, 2019, Defendant provided a letter explaining why it believed it was required to request certain confidential information from Plaintiff.  (Dkt. #19).  In short, Defendant stated that it was obligated to request such confidential information by state and municipal regulations.  (*Id.*).

On June 27, 2019, Plaintiff filed a motion for entry of a default judgment against Defendant, citing the fact that Defendant had not yet answered the Amended Complaint.  (Dkt. #22-26).  Defendant filed its Answer to the Amended Complaint the next day.  (Dkt. #29).  The Court denied Plaintiff's motion for entry of a default judgment against Defendant on June 28, 2019, noting that during the May 14, 2019 hearing, it had stayed Defendant's obligation to answer the Amended Complaint through July 31, 2019.  (Dkt.

#31).  Plaintiff thereafter filed a motion to strike the Answer (Dkt. #33), which motion the Court denied on August 13, 2019 (Dkt. #34).

On June 28, 2019, Defendant requested a pre-motion conference concerning its anticipated motion to dismiss in part the Amended Complaint. (Dkt. #30).  The Court scheduled a pre-motion conference for August 30, 2019, and later adjourned that conference to September 24, 2019.  (Dkt. #31, 37). During the September 24, 2019 conference, Plaintiff stated that he had been permitted to remain in the Apartment through July 31, 2019, and that he had since moved from the Apartment.  (*See generally* Dkt. #42 (transcript)).  Despite the fact that the two conditions provided during the May 14, 2019 hearing had been met, Plaintiff stated his intention to proceed with his suit and requested leave to amend his pleadings further to remove certain claims for relief that had become moot.  (*Id.*).  The Court granted Plaintiff leave to file a Third Amended Complaint, which he did on November 12, 2019.  (Dkt. #41).[4] Defendant sought leave to file a motion to dismiss the Third Amended Complaint on December 12, 2019 (Dkt. #44), and the Court entered a schedule for the briefing of the anticipated motion on December 16, 2019 (Dkt. #45).

---

[4]     During the September 24, 2019 conference, Plaintiff expressed an intent to amend his complaint for the specific purpose of removing certain claims for relief that had become moot over time.  (Dkt. #42 (transcript) at 8:15-20).  The Court granted Plaintiff leave to file a second amended complaint for this narrow purpose.  In the Third Amended Complaint, however, Plaintiff purported to add thirteen new defendants, including Yolanda Roberts, the Children's Rescue Fund and its founder, Carl C. Icahn, along with multiple members of the board of the Children's Rescue Fund.  (*See* TAC).  Because Plaintiff did not seek, and was not granted, leave to amend his pleadings in so drastic a fashion, the Court will not consider the portions of the Third Amended Complaint that purport to add these thirteen defendants.  As it happens, Plaintiff does not allege that any of these individuals was personally involved in any of the conduct underlying the claims in the Third Amended Complaint.

Defendant filed its motion to dismiss on January 20, 2020.  (Dkt. #46-47).
Plaintiff filed his opposition papers on January 24, 2020.  (Dkt. #48).  The
motion became fully briefed when Defendant filed its reply papers in further
support of its motion on March 5, 2020.  (Dkt. #49).

On March 10, 2020, Plaintiff filed an unauthorized sur-reply in further
opposition to the motion to dismiss.  (Dkt. #50-51).  On March 12, 2020,
Defendant filed a letter seeking to strike Plaintiff's sur-reply or, in the
alternative, to file its own sur-reply.  (Dkt. #52).  The Court declined both
requests on March 12, 2020, stating that it would consider Plaintiff's sur-reply
only insofar as it addressed arguments that had been raised for the first time
in Defendant's March 5, 2020 reply brief.  (Dkt. #53).

## DISCUSSION

**A.    Applicable Law**

### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for
lack of subject matter jurisdiction.  "A case is properly dismissed for lack of
subject matter jurisdiction under Rule 12(b)(1) when the district court lacks
the statutory or constitutional power to adjudicate it."  *Lyons* v. *Litton Loan
Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (internal quotation
marks omitted) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir.
2000)).

The Second Circuit has drawn a distinction between two types of Rule
12(b)(1) motions challenging subject matter jurisdiction: facial motions and

fact-based motions.  *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d
Cir. 2016); *see also Katz* v. *Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017).
A facial Rule 12(b)(1) motion is one "based solely on the allegations of the
complaint or the complaint and exhibits attached to it."  *Carter*, 822 F.3d at 56.
A plaintiff opposing such a motion bears "no evidentiary burden."  *Id.*  Instead,
to resolve a facial Rule 12(b)(1) motion, a district court must "determine
whether [the complaint and its exhibits] allege[] facts that" establish subject
matter jurisdiction.  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671
F.3d 140, 145 (2d Cir. 2011) (per curiam)).  And to make that determination, a
court must accept the complaint's allegations as true "and draw[] all
reasonable inferences in favor of the plaintiff."  *Id.* at 57 (internal quotation
marks omitted) (quoting *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir.
2003)).

     "Alternatively, a defendant is permitted to make a fact-based Rule
12(b)(1) motion, proffering evidence beyond the [p]leading."  *Carter*, 822 F.3d at
57.  "In opposition to such a motion, plaintiffs must 'come forward with
evidence of their own to controvert that presented by the defendant,' or may
instead 'rely on the allegations in the[ir p]leading if the evidence proffered by
the defendant is immaterial because it does not contradict plausible allegations
that are themselves sufficient to show standing.'"  *Katz*, 872 F.3d at 119
(alteration in original) (quoting *Carter*, 822 F.3d at 57).  If a defendant supports
his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic

evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57.

A related issue is that of standing. Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const., art. III, § 2, cl. 1. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 156 (2014) (alteration in original) (quoting *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc.* v. *Robins*, — U.S. —, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560). "The plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision." *Id.* Where, as here, a plaintiff seeks injunctive relief, he "must also prove that the identified injury in fact presents a 'real and immediate threat of future injury' often termed a 'likelihood of future harm.'" *Bernstein* v. *City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain* v. *Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

### 2. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a defendant is permitted to move that the plaintiff's action be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under

Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'"  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief."  *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and brackets omitted) (quoting *Posr* v. *Court Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)). With that said, to survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations must at least "be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. Indeed, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks and brackets omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## B.    Analysis

As noted, Defendant moves to dismiss eight of Plaintiff's nine claims for relief, which are asserted under the following different federal, state, and city laws: (i) 42 U.S.C. § 1983; (ii) the Education Law; (iii) the PPPL; (iv) the SSN Protection Law; (v) the ADA; (vi) the FHA; (vii) the NYSHRL; and (viii) the NYCHRL.[5] The Court will address the viability of each of Plaintiff's claims,

---

[5]    In Plaintiff's brief in opposition to the motion to dismiss, he raises an argument in support of a claim brought pursuant to the Privacy Rights Act of 1974, 5 U.S.C. § 552(a) (the "Privacy Act"). (Pl. Opp. 9). Even if Plaintiff had presented this claim in his Third Amended Complaint — and he did not — it would have failed. The United States Court of Appeals for the Second Circuit has held that "[t]he civil remedy provisions of the [Privacy Act] do not apply against private individuals, state agencies, private entities, or state and local officials." *Pennyfeather* v. *Tessler*, 431 F.3d 54, 56 (2d Cir. 2005) (second alteration in original) (internal quotation marks omitted) (quoting *Unt* v.

organizing its analysis based on the order in which Plaintiff presented his claims in the Third Amended Complaint.

### 1.    Plaintiff States a Claim Under 42 U.S.C. § 1983

*First*, Plaintiff asserts a claim pursuant to § 1983, alleging that Defendant's attempts to collect confidential information violated his constitutional right to privacy, as protected by the Fourteenth Amendment. (TAC ¶¶ 36-46, 62).[6]  Specifically, Plaintiff claims that Defendant's employees had "no authority to ask or demand any confidential documents," and nevertheless did so, acting as if it was "somehow enforcing state law." (*Id.* at ¶¶ 37-41).  Section 1983 establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt* v. *Cole*, 504 U.S. 158, 161 (1992).  As such, a "§ 1983 claim has two essential elements: [i] the defendant acted under color of state law; and

---

*Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985)).  Because Defendant is a private entity, Plaintiff does not have a private right of action against it under the Privacy Act.

[6]     Plaintiff alleges that Defendant's conduct violated his "constitutional right to privacy." (TAC ¶ 62).  Although Plaintiff does not specifically allege that his constitutional right to privacy is protected by the Fourteenth Amendment, because Plaintiff is proceeding *pro se*, the Court "construe[s] Plaintiff's] pleadings broadly, and interpret[s] them 'to raise the strongest arguments that they suggest.'"  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  Courts in this Circuit have recognized that the Due Process Clause of the Fourteenth Amendment protects a constitutional right to privacy.  *See Hancock* v. *Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018).  Furthermore, Defendant does not argue that the conduct alleged fails to state a claim under the Fourteenth Amendment, but only that state action is inadequately pleaded.  Therefore, the Court finds that Plaintiff has sufficiently alleged that Defendant's attempts to collect confidential information from him violated a right protected by the Fourteenth Amendment.

[ii] as a result of the defendant's actions, the plaintiff suffered a denial of her

federal statutory rights, or her constitutional rights or privileges." *Annis* v. *Cty.*

*of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also City of Okla. City* v.

*Tuttle*, 471 U.S. 808, 816 (1985) ("By its terms, of course, [Section 1983]

creates no substantive rights; it merely provides remedies for deprivations of

rights established elsewhere.").

Defendant argues that Plaintiff's § 1983 claim must fail because it is a

private entity, and did not act under color of state law in collecting Plaintiff's

confidential documents.  (Def. Br. 5-7).  Generally speaking, private parties,

like Defendant, are not liable under § 1983, and the Court may dismiss a

complaint that fails to allege state action.  *See DeMatteis* v. *Eastman Kodak*

*Co.*, 511 F.2d 306, 311 (2d Cir. 1975) (affirming dismissal of complaint where

plaintiff failed to include allegations of state action in complaint), *modified on*

*other grounds*, 520 F.2d 409 (2d Cir. 1975).  But the conduct of a nominally

private entity may be attributed to the state, thereby satisfying the state action

requirement, when:

> [i] the entity acts pursuant to the "coercive power" of the
> state or is "controlled" by the state ("the compulsion
> test"); [ii] when the state provides "significant
> encouragement" to the entity, the entity is a "willful
> participant in joint activity with the [s]tate," or the
> entity's functions are "entwined" with state policies ("the
> joint action test" or "close nexus test"); or [iii] when the
> entity "has been delegated a public function by the
> [s]tate," ("the public function test").

*Sybalski* v. *Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir.

2008) (alterations in original) (quoting *Brentwood Acad.* v. *Tenn. Secondary Sch.*

14

*Athletic Ass'n*, 531 U.S. 288, 296 (2001)).  "It is not enough, however, for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action."  *Id.* at 257-58 (quoting *Schlein* v. *Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)); *see also United States* v. *Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1296 (2d Cir. 1991) ("The question is not whether the decision to *establish* the [private entity] was state action, but rather whether the [private entity's] decision to *sanction* [plaintiffs] may be 'fairly attributable' to the [g]overnment." (quoting *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))).

The Court finds that Plaintiff has plausibly alleged state action under a compulsion theory.  In a letter submitted to the Court on June 21, 2019, Defendant stated that it was "obligated" to collect certain private information from Plaintiff pursuant to several state and city regulations.  (Dkt. #19).  And Defendant further acknowledged this obligation in its memorandum of law in support of its motion to dismiss.  (Def. Br. 7).  To be sure, the Third Amended Complaint did not allege that Defendant's employees were compelled by the state to demand Plaintiff's confidential documents or private information.  (*See generally* TAC).  Plaintiff's opposition brief, however, does claim that Defendant operates under guidelines from DHS, and that its employees are "obligated to ... collect[] confidential information that would normally be presented to government services programs."  (Pl. Opp. 4).  By virtue of the fact that Plaintiff is proceeding *pro se*, the Court construes that allegation as supplementing

those presented in the Third Amended Complaint.  *See Nielsen* v. *Rabin*, 746
F.3d 58, 62 (2d Cir. 2014) ("[A] *pro se* litigant in particular should be afforded
every reasonable opportunity to demonstrate that he has a valid
claim."); *Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district
court deciding a motion to dismiss may consider factual allegations made by
a *pro se* party in his papers opposing the motion."); *Reeves* v. *City of Yonkers*,
No. 16 Civ. 2223 (KMK), 2017 WL 2275025, at *3 (S.D.N.Y. May 24, 2017)
(explaining that a court may consider factual allegations and documents
submitted with a *pro se* litigant's opposition papers).  The Court construes this
allegation in the light most favorable to Plaintiff, and understands Plaintiff to
claim that the state coerced Defendant to collect the confidential documents
that are at the heart of Plaintiff's § 1983 claim, or at the very least that the
state controlled such collection.[7]  Thus, Plaintiff has plausibly alleged that
Defendant's collection of those documents was done under color of state law.

---

[7]     The Court notes that Plaintiff alleges that Defendant must comply with DHS
        regulations, and DHS is a municipal, not a state, department.  (TAC ¶¶ 18-19).  The
        compulsion test, as defined by the Second Circuit, applies where a private entity is
        compelled by the *state* to take an action; the Second Circuit has not provided that the
        compulsion test would also be satisfied where a private entity is compelled to take an
        action by a municipality.  *See Sybalski* v. *Indep. Grp. Home Living Program, Inc.*, 546
        F.3d 255, 257 (2d Cir. 2008).  The Supreme Court's logic in *Monell* v. *Department of
        Social Services of the City of New York*, 436 U.S. 658, 687 (1978), in which the Court
        held that municipalities are not exempted from the scope of § 1983, might suggest that
        the compulsion test would also be satisfied if a private entity were coerced to take an
        action by a municipality's official policy.  The Court need not address that issue here for
        two reasons.  *First*, Defendant has not raised it in its motion papers.  And *second*,
        construing Plaintiff's allegations in the Third Amended Complaint and his opposition
        brief liberally, the Court understands that Plaintiff intended to refer to Defendant's
        June 21, 2019 letter, in which Defendant stated that it was obligated to collect
        confidential information through state and municipal regulations.  (Dkt. #19).  Thus,
        Plaintiff alleges that Defendant was compelled to collect his confidential documents by
        both state and municipal law.

Defendant does not otherwise argue that Plaintiff fails to state a claim for relief under § 1983: for instance, Defendant does not claim that Plaintiff's Fourteenth Amendment rights were not violated by Defendant's conduct.[8] Having resolved the state action issue against Defendant, the Court denies its motion to dismiss Plaintiff's § 1983 claim.

### 2. Plaintiff Fails to State a Claim Under New York Education Law § 7704

*Second*, Plaintiff alleges that one of Defendant's employees acted as an unlicensed social worker in violation of New York Education Law § 7704.  (TAC ¶¶ 38-42).  As Defendant correctly notes, however, this provision of the Education Law does not include a private right of action.  *See Requa* v. *Coopers & Lybrand*, 756 N.Y.S.2d 43, 44 (1st Dep't 2003) ("Title VIII of the New York Education Law … which provides for the regulation of the admission to and practice of certain professions, does not provide for a private right of action by an individual who sustains damages as a result of professional misconduct defined therein.").  Accordingly, Plaintiff's claim brought pursuant to § 7704 is dismissed.

---

[8]     Defendant does argue, in a footnote, that it cannot be held liable for its employees' efforts to collect confidential documents.  (Def. Reply 2 n.1).  But Defendant's argument is premised upon *Monell*, 436 U.S. at 690-91, which is inapposite here.  *Monell* stands for the proposition that "a municipal entity may only be held liable where the entity itself commits a wrong," *Genovese* v. *Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013), and Defendant is not a municipal entity.  Further, the Court understands Plaintiff to be alleging that Defendant's employees were acting pursuant to Defendant's own policies, and thus that Defendant is liable for their ensuing conduct.

### 3. Plaintiff Fails to State a Claim Under the PPPL

*Third,* Plaintiff claims that Defendant violated the PPPL, a statute under New York's Public Officers Law that restricts state agencies' use and collection of private personal data. (TAC ¶¶ 47-74).  *See* N.Y. Pub. Off. Law §§ 91-99. The statute defines "agency" to include:

> any state board, bureau, committee, commission, council, department, public authority, public benefit corporation, division, office or any other governmental entity performing a governmental or proprietary function for the state of New York, except the judiciary or the state legislature or any unit of local government and shall not include offices of district attorneys.

*Id.* § 92(1).  As Defendant has argued, whether or not it was acting under color of state law, Defendant is a private entity, not a public agency that would be subject to the requirements of the PPPL.  (Def. Br. 7-10).  Accordingly, Plaintiff's claim brought pursuant to the PPPL is dismissed.

### 4. Plaintiff Fails to State a Claim Under the SSN Protection Law

*Fourth*, Plaintiff claims that Defendant violated New York's SSN Protection Law by emailing and printing a document bearing Plaintiff's social security number.  (TAC ¶¶ 71-74).  But, as Plaintiff acknowledges (*id.* at ¶ 73), enforcement of the SSN Protection Law is left to the Attorney General; the statute does not convey a private right of action.  *See Abdale* v. *N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 858-59 (N.Y. Sup. Ct. 2015) ("As the enforcement of the provisions of this statute has been entrusted to the attorney general, no private right of action exists with respect to a violation of [the SSN Protection Law]." (internal citation omitted)).  Thus, Plaintiff has

failed to state a claim under the SSN Protection Law, and that cause of action is dismissed.[9]

### 5.    Plaintiff Fails to State a Claim Under the ADA

*Fifth*, Plaintiff claims that Defendant violated Title III of the ADA by failing to provide a reasonable accommodation for his physical disabilities. (TAC ¶¶ 75-86, 116-17, 130).  Defendant argues that Plaintiff's ADA claim must fail for several reasons: (i) Plaintiff lacks standing to bring a claim under Title III of the ADA; (ii) the apartment building that Defendant operates is not a place of public accommodation, and is thus not subject to the ADA; and (iii) Defendant did not deny Plaintiff the benefit of its services.  The Court begins by addressing whether Plaintiff has standing to bring an ADA claim, and thus whether it has subject matter jurisdiction over any such claim.  *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("In the mine run of cases, jurisdiction 'will involve no arduous inquiry' and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum 'should impel the federal court to dispose of those issues first.'" (alterations omitted) (quoting *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999)); *Mahon* v. *Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that 'a plaintiff must demonstrate standing for each claim

---

[9]    To the extent that Plaintiff attempts to assert a common-law claim arising out of the possibility that the confidential information gathered by Defendant could have been the result of a data breach, Defendant argues that Plaintiff lacks standing because he has not plausibly alleged that he suffered an injury in fact.  (Def. Br. 9 (citing *Spokeo, Inc.* v. *Robins*, — U.S. —, 136 S. Ct. 1540, 1547 (2016))).  The Court agrees.  Plaintiff has not alleged that his confidential information was subject to a data breach that caused him cognizable harm.

[s]he seeks to press.'" (alteration in original) (quoting *DaimlerChrysler Corp.* v.
*Cuno*, 547 U.S. 332, 335 (2006))).

Binding precedent in this Circuit makes clear that "[m]onetary relief … is
not available to private individuals under Title III of the ADA." *Powell* v. *Nat'l*
*Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004), *opinion corrected*, 511
F.3d 238 (2d Cir. 2004).  While "[a] private individual may only obtain
injunctive relief for violations of a right granted under Title III[,] he cannot
recover damages." *Id.* (citing *Newman* v. *Piggie Park Enters., Inc.*, 390 U.S. 400,
402 (1968)).  And though Plaintiff has not requested that he be granted
injunctive relief, the Court might still grant him such relief if it were warranted.
*Id.* ("Under Rule 54(c) of the Federal Rules of Civil Procedure, a court can grant
any relief to which a prevailing party is entitled, whether or not that relief was
expressly sought in the complaint.").

To be entitled to injunctive relief under Title III of the ADA, Plaintiff must
have standing.  "In reviewing standing under the ADA, 'a broad view of
constitutional standing is appropriate because private enforcement suits are
the primary method of obtaining compliance with the Act.'" *Feltzin* v.
*Clocktower Plaza Props., Ltd.*, No. 16 Civ. 4329 (DRH) (AYS), 2018 WL 1221153,
at *3 (E.D.N.Y. Mar. 8, 2018) (quoting *Rosa* v. *600 Broadway Partners, LLC*,
175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016)).  In actions brought under the ADA,
the Second Circuit has "found standing (and therefore an injury in fact),"
*Kreisler* v. *Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (per
curiam), where a plaintiff "[i] alleges past injury under the ADA, [ii] shows that

it is reasonable to infer from his or her complaint that the discriminatory
treatment will continue, and [iii] shows that it is reasonable to infer that he or
she 'intend[s] to return to [the public accommodation],'" *Harty* v. *Greenwich
Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2d Cir. 2013) (summary order)
(alterations in *Harty*) (quoting *Kreisler*, 731 F.3d at 187-88).

Plaintiff no longer lives in the Apartment or in other housing provided by
Defendant.  (TAC ¶ 133).  And Plaintiff does not allege that he intends to visit
any facility operated by Defendant in the future.  (*See generally* TAC).  Thus,
regardless of whether the Apartment or Defendant's facilities are places of
public accommodation within the meaning of the ADA,[10] it is not reasonable to
infer that Plaintiff intends to return.  For this reason, Plaintiff lacks standing to
seek injunctive relief, and the Court lacks subject matter jurisdiction over
Plaintiff's ADA claim.

---

[10]     Based on the allegations in the Third Amended Complaint, the Apartment may well
constitute a public accommodation.  Plaintiff repeatedly refers to the Apartment and
Defendant's facilities as a homeless shelter (TAC ¶¶ 130, 148), and the ADA provides
that "private entities are considered public accommodations ... if the operations of such
entities affect commerce," including "homeless shelter[s] ... or other social service center
establishment[s]." 42 U.S.C. § 12181(7)(K).  Conversely, to the extent that the
Apartment was publicly subsidized temporary housing and not a homeless shelter, it
would likely not constitute a place of public accommodation.  It is well established that
a "residential facility, such as an apartment, is not a public accommodation under the
ADA."  *Kitchen* v. *Phipps Houses Grp. of Cos.*, No. 08 Civ. 4296 (DC), 2009 WL 290470,
at *2 n.3 (S.D.N.Y. Feb. 5, 2009)  (internal quotation marks omitted) (quoting *Reid* v.
*Zackenbaum*, No. 05 Civ. 1569 (FB), 2005 WL 1993394 (E.D.N.Y. Aug. 17, 2005)),
*aff'd*, 380 F. App'x 99 (2d Cir. 2010) (summary order).  In analogous cases, sister courts
have found that publicly subsidized apartments are not places of public
accommodation.  *See Spavone* v. *Transitional Servs. of N.Y. Supportive Hous. Program
(TSI)*, No. 16 Civ. 1219 (MKB), 2016 WL 2758269, at *7 (E.D.N.Y. May 12, 2016) (finding
that a publicly subsidized apartment provided by a non-profit mental health agency was
not a place of public accommodation); *see also Parham* v. *CIH Props., Inc.*, No. 14 Civ.
1613 (RJL), 2015 WL 5294683, at *3 (D.D.C. Sept. 8, 2015) ("A number of courts have
observed that private apartment complexes do not qualify as 'public accommodations'
for purposes of the ADA, even if they offer publicly subsidized housing.").

### 6.     Plaintiff States a Claim Under the FHA

*Sixth*, Plaintiff brings claims under the FHA, which prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," and which makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any … renter because of a handicap."  42 U.S.C. § 3604(b), (f).  To establish discrimination under the FHA, "plaintiffs have three available theories: [i] intentional discrimination (disparate treatment); [ii] disparate impact; and [iii] failure to make a reasonable accommodation."  *Tsombanidis* v. *W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003); *see also Martinez ex rel. Martinez* v. *Lexington Gardens Assocs.*, 336 F. Supp. 3d 270, 277 (S.D.N.Y. 2018).  Construed liberally, the Third Amended Complaint asserts claims of housing discrimination through theories of disparate treatment and failure to make a reasonable accommodation.  Defendant argues that both theories should be dismissed for failure to state a claim.  The Court addresses each theory in turn and concludes that Plaintiff has stated claims that he suffered disparate treatment due to his race and disability, and that he was denied a reasonable accommodation for his disability.

### a.     Disparate Treatment

Plaintiff's disparate treatment claims are premised on the fact that Defendant's employee told Plaintiff that he (Plaintiff) needed to move out of the

Apartment immediately, because he had stayed in temporary housing too long. Plaintiff argues that this attempt to remove him from his Apartment was motivated by discriminatory animus against Plaintiff because of his race, familial status, and disability.  (TAC ¶¶ 87-128).

For Plaintiff's disparate treatment claims to succeed, he "must establish that the defendant had a discriminatory intent or motive."  *Texas Dep't of Hous. & Cmty. Affairs* v. *Inclusive Cmtys. Project, Inc.*, — U.S. —, 135 S. Ct. 2507, 2513 (2015) (internal quotation marks omitted) (quoting *Ricci* v. *DeStefano*, 557 U.S. 557, 577 (2009)).  "Because discriminatory intent is rarely susceptible to direct proof, litigants may make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'"  *Hayden* v. *Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (quoting *Vill. of Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)).  Accordingly, in the absence of "direct proof" of discriminatory intent, courts apply the burden-shifting standard supplied by the Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973), in adjudicating FHA disparate treatment claims.  *Palmer* v. *Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order).  Under *McDonnell Douglas*, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination, after which the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision.  *See Mitchell* v. *Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

Significantly, however, the "*McDonnell Douglas* [framework] is an evidentiary standard, not a pleading requirement."  *Swierkiewicz* v. *Sorema*

*N.A.*, 534 U.S. 506, 510 (2002).  Thus, "a plaintiff is not required to plead

a *prima facie* case under *McDonnell Douglas*, at least as the test was originally

formulated, to defeat a motion to dismiss."  *Vega* v. *Hempstead Union Free Sch.

Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see also Palmer*, 755 F. App'x at 45

(applying *Swierkiewicz* and *Vega* to FHA disparate treatment claims).  Instead,

a plaintiff can survive a motion to dismiss if the plaintiff can allege facts that

support a plausible claim that the plaintiff was "a member of a protected class,"

suffered relevant "adverse" treatment, and "can sustain a *minimal* burden of

showing facts suggesting an inference of discriminatory motivation."  *Littlejohn*

v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Palmer*, 755 F. App'x at

45.  In other words, "because 'a temporary presumption of discriminatory

motivation' is created under the first prong of the *McDonnell Douglas* analysis,

a plaintiff 'need only give plausible support to a minimal inference of

discriminatory motivation'" at the pleading stage.  *Vega*, 801 F.3d at 84

(quoting *Littlejohn*, 795 F.3d at 307, 311).  The question, then, is whether

Plaintiff has alleged facts that would plausibly support a minimal inference

that Defendant intentionally discriminated against Plaintiff due to his race,

familial status, or disability.

The Court finds that Plaintiff has met this low threshold with regard to

his race-based claim.  Plaintiff asserts that Defendant told him that he needed

to move out of his Apartment immediately; that this directive was given

because Plaintiff was a Black man; and that Defendant has a policy of favoring

those of "[L]atino origin."  (TAC ¶ 114).[11]  To support this claim, Plaintiff

identified three Latino individuals who were permitted to live in temporary

housing at Defendant's facility for more time than Plaintiff lived in the

Apartment.  (*Id.* at ¶¶ 92-95).  One of these individuals in particular informed

Plaintiff that she had never been told that she had stayed too long and needed

to leave.  (*Id.* at ¶ 98).  Accepting Plaintiff's allegations as true, the fact that

Defendant was ready to permit individuals who were not members of Plaintiff's

race to reside in its temporary housing for more time than they would allow

Plaintiff to stay there allows a minimal inference that Defendant discriminated

against Plaintiff due to his race.  *See Khodeir* v. *Sayyed*, No. 15 Civ. 8763

(DAB), 2016 WL 5817003, at *6 (S.D.N.Y. Sept. 28, 2016) ("Plaintiffs have also

created an inference of discriminatory intent by asserting their protected

statuses ..., setting forth circumstances under which they were treated

differently, and including an allegation that the different treatment was

because of their protected statuses.").[12]

---

[11]    Defendant makes much of the fact that the Third Amended Complaint includes a single
sentence alleging that Defendant had a policy of favoring Caucasian families and does
not include any other facts that would substantiate an inference that Defendant
discriminated against non-Caucasian residents.  (Def. Br. 16-17 (citing TAC ¶ 141)).
The Court agrees that Plaintiff's pleadings could not support an inference that
Defendant treated Caucasian residents better than non-Caucasian residents.  That
said, the Court believes that Plaintiff's claim of racial discrimination is better stated in
his allegation that Defendant had a policy of providing "unequal [treatment in favor] of
those of [L]atino origins."  (TAC ¶ 114).

[12]    Defendant asks the Court to take notice of the fact that Plaintiff was not forced to leave
the Apartment, and ultimately left of his own accord.  (Def. Br. 20).  But this fact is not
alleged in the Third Amended Complaint, so the Court may not consider it at this stage
in the proceedings.  Further, the Court finds that Plaintiff's assertion that he was
pressured to leave the Apartment due to the amount of time he had stayed there, while
other occupants who had lived in temporary housing did not face the same pressure, is
sufficient to state a claim that he received unequal treatment under the FHA.

By contrast, the Third Amended Complaint lacks similarly specific allegations as to Plaintiff's familial-status-based discrimination claim. Plaintiff merely offers a conclusory assertion that his family, which included two teenage children, was discriminated against and treated differently than other families. (TAC ¶¶ 99-100, 112, 123). But Plaintiff does not allege with the requisite specificity how treatment of his family differed from that of similar families. Indeed, Plaintiff alleges that two other families with children in Defendant's facility were permitted to stay in temporary housing longer than he was. (*Id.* at ¶¶ 93, 95, 123). This would suggest that any different treatment that Plaintiff received was not due to his familial status. In short, Plaintiff has not provided facts that could plausibly support even a minimal inference of discriminatory motivation with regard to Plaintiff's familial status. *See Palmer*, 755 F. App'x at 46 (affirming dismissal of disparate treatment claim brought under the FHA, where it was supported only by conclusory allegations and lacked factual underpinning); *see also Pierre* v. *Lantern Grp. Found., Inc.*, No. 14 Civ. 8449 (JMF), 2016 WL 3461309, at *2 (S.D.N.Y. June 20, 2016) (dismissing FHA claim where the plaintiff did not allege that she was part of a protected group and failed to connect the alleged harassment suffered to any discriminatory motive).

Finally, the Court finds that the Third Amended Complaint allows an inference that Defendant discriminated against Plaintiff because of his

---

Construed liberally, the Third Amended Complaint alleges that the pressure exerted upon Plaintiff to move played a part in his leaving the Apartment.

disability.  Defendant does not contest that Plaintiff has alleged that he
suffered from a disability in the form of osteoarthritis of the hip, which
inhibited his movement.  (*See generally* Def. Br.).  To support his claim that
Defendant intended to treat him differently based on this disability, Plaintiff
alleges that Defendant pressured him and other occupants of its temporary
housing who received supplemental disability income to move out, but did not
exert this same pressure against those who were able to work.  (TAC ¶ 105).
Thus, Plaintiff has adequately alleged that he was part of a protected class;
that Defendant treated him and other members of that protected class
differently; and that this different treatment was the direct result of their
protected status.

### b.      Reasonable Accommodation

Plaintiff's FHA reasonable accommodation claim is premised on
Defendant's alleged failure to provide him with a reasonable accommodation for
his disability.  Specifically, Plaintiff claims that he provided Defendant with a
letter from an orthopedic specialist on January 15, 2018, which letter stated
that Plaintiff suffered from osteoarthritis of the hip and requested that Plaintiff
be moved from his fifth-floor apartment to a lower floor.  (TAC ¶ 80).  To
establish a claim under the FHA based on denial of a reasonable
accommodation:

> a plaintiff with an alleged disability must establish
> that: [i] she is disabled within the meaning of the FHA,
> [ii] the defendant knew or should have known of this
> fact, [iii] an accommodation may be necessary to afford
> her an equal opportunity to use and enjoy the
> dwelling; [iv] such accommodation is reasonable; and

[v] the defendant refused to make the requested
accommodation.

*Martinez ex rel. Martinez*, 336 F. Supp. 3d at 277 (internal quotation marks
omitted) (quoting *Tuman* v. *VL GEM LLC*, No. 15 Civ. 7801 (NSR), 2017 WL
781486, at *5 (S.D.N.Y. Feb. 27, 2017)).  In other words, plaintiffs "must show
that, but for the accommodation, they likely will be denied an equal
opportunity to enjoy the housing of their choice."  *Tsombanidis*, 352 F.3d at
578.

Defendant does not challenge the adequacy of Plaintiff's pleadings that:
(i) Plaintiff is disabled; (ii) Defendant knew or should have known about
Plaintiff's disability; (iii) an accommodation may have been necessary to afford
him equal opportunity to use the dwelling; and (iv) Plaintiff's requested
accommodation —to move to a lower floor — was reasonable.  (*See generally*
Def. Br.).  *See also Logan* v. *Matveevskii*, 57 F. Supp. 3d 234, 256 (S.D.N.Y.
2014) ("*Logan I*") ("Several courts have held that, under certain circumstances,
a mobility-impaired resident's request to move from an upper-floor apartment
to a lower-floor apartment may be a cognizable request for a reasonable
accommodation under the FHA[.]").  Instead, Defendant argues that it *did*
provide Plaintiff with a reasonable accommodation.  (Def. Br. 20-22).  Plaintiff
himself acknowledged in the Third Amended Complaint that Defendant offered
to move him to a one-bedroom apartment on the third floor or to assisted living
housing, and that Plaintiff declined both offers because he found them
unsuitable for his family situation.  (TAC ¶¶ 121-23).

Ultimately, the Court need not decide whether the accommodations that Defendant offered Plaintiff were reasonable within the meaning of the FHA, *see Austin* v. *Town of Farmington*, 826 F.3d 622, 629 (2d Cir. 2016) ("The issue of whether the failure of the Town to allow the modifications to continue in place after the child left the property was reasonable therefore can neither be avoided nor decided as a matter of law on the pleadings."),[13] because Plaintiff appears to concede the point in his opposition papers: "Plaintiff consulted with a qualified doctor and no reasonable accommodation was addressed or attempted until after a suit was filed." (Pl. Opp. 14). In so doing, however, Plaintiff alleges for the first time that, at the time he initiated this suit in February 2019, more than a year after he had requested a reasonable accommodation, no accommodation had been offered to him. Defendant urges the Court to ignore this assertion, because it was not presented in the Third Amended Complaint. (Def. Reply 10 n.6). But, as the Court has already noted, *pro se* plaintiffs are to be given every reasonable opportunity to demonstrate

---

[13]     The Court recognizes that, though reasonable accommodations must be made to allow disabled individuals equal opportunity to dwellings, that does not mean that "a disabled individual [must be provided] with every accommodation he requests or the accommodation of his choice." *McElwee* v. *Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (addressing analogous claims for reasonable accommodation brought under the ADA). Specifically "a landlord is required to make a reasonable accommodation provided that doing so does not impose an undue hardship or burden[.]" *Martinez ex rel. Martinez* v. *Lexington Gardens Assocs.*, 336 F. Supp. 3d 270, 278 (S.D.N.Y. 2018); *see also Austin* v. *Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) ("A requested accommodation is reasonable where the cost is modest and it does not pose an undue hardship or substantial burden on the rule maker."); *Olsen* v. *Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014) ("Requested accommodations are reasonable where the cost is modest and they do not pose an undue hardship or a substantial burden on the housing provider."). The Court is skeptical that Plaintiff could have brought a claim under the theory that the accommodations that Defendant offered were insufficient under the FHA.

that they have valid claims, *Nielsen*, 746 F.3d at 62, and courts may consider factual allegations made by *pro se* parties in their papers opposing motions to dismiss, W*alker*, 717 F.3d at 122 n.1.  Thus, the Court will accept as true Plaintiff's allegation that no reasonable accommodations had been offered to him at the time he filed this suit.

Ultimately, this single allegation makes all the difference to the viability of Plaintiff's FHA reasonable accommodation claim.  This is because "a refusal of a request for a reasonable accommodation can be both actual or constructive."  *United States* v. *111 E. 88th Partners*, No. 16 Civ. 9446 (PGG), 2020 WL 1989396, at *16 (S.D.N.Y. Apr. 27, 2020) (internal quotation marks omitted) (quoting *Logan I*, 57 F. Supp. 3d at 257); *see also Austin*, 826 F.3d at 629 (citing approvingly to *Logan I*'s assertion that "a refusal of a request for a reasonable accommodation [under the FHA] can be both actual or constructive").  A constructive denial may occur where a "request for accommodation is met with indeterminate delay instead of outright denial."  *Austin*, 826 F.3d at 629 (citing *Logan I*, 57 F. Supp. 3d at 257).

The "determination of when a request for a reasonable accommodation is constructively denied … is highly fact-specific, and is made on a case-by-case basis."  *111 E. 88th Partners*, 2020 WL 1989396, at *16 (alteration in original) (internal quotation marks omitted) (quoting *Logan I*, 57 F. Supp. 3d at 267).  In determining whether a constructive denial occurred, sister courts have considered "whether the delay was caused by the defendant's unreasonableness, unwillingness to grant the requested accommodation, or

bad faith, as opposed to mere bureaucratic incompetence or other comparatively benign reasons." *Logan I*, 57 F. Supp. 3d at 271.  Months-long delays in responding to requests for reasonable accommodation have been found to constitute constructive denials.  *See Logan* v. *Matveevskii*, 175 F. Supp. 3d 209, 229-30 (S.D.N.Y. 2016) ("*Logan II*") (collecting cases).  That said, a long period of delay is not by itself sufficient to establish constructive denial: "a plaintiff [also] bears the burden of demonstrating discriminatory intent." *Logan I*, 57 F. Supp. 3d at 271.

Here, Plaintiff alleges that there was at least a one-year delay in Defendant's response to his request for a reasonable accommodation, and that no response had been provided when he initiated this suit.  (Pl. Opp. 4, 14).[14] Shorter periods of delay have been found to constitute constructive denials. *See, e.g.*, *Groome Res. Ltd., LLC* v. *Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (finding that a constructive denial occurred after a 127–day delay). And Plaintiff claims that he asked Defendant's employees about the status of his request for a reasonable accommodation three times a week during that one-year period.  (TAC ¶ 82).  This is sufficient to give rise to a plausible

---

[14]     Defendant has not argued that its belated offers of reasonable accommodation, made after this suit was initiated, could moot any claim for a denial of a reasonable accommodation premised upon a constructive denial.  Nor does the Court believe any such argument would be successful.  Compensatory and punitive damages are available under the FHA, 42 U.S.C. § 3613(c)(1), so if Plaintiff were constructively denied a reasonable accommodation, he might be entitled to damages whether or not that reasonable accommodation was later provided.  Indeed, sister courts in this Circuit have analyzed whether a constructive denial occurred, even where the requested accommodation was later provided.  *See, e.g.*, *Taylor* v. *Hous. Auth. of New Haven*, 267 F.R.D. 36, 69-70 (D. Conn. 2010), *aff'd sub nom. Taylor ex rel. Wazyluk* v. *Hous. Auth. of New Haven*, 645 F.3d 152 (2d Cir. 2011).

inference that Defendant's failure to address Plaintiff's request for a reasonable accommodation was not the result of neglect or bureaucratic incompetence, but was instead the product of Defendant's discriminatory intent.  Thus, Plaintiff has stated a claim that he was constructively denied a reasonable accommodation under the FHA.

### 7.  Plaintiff States a Claim Under the NYSHRL and the NYCHRL

*Finally*, the Third Amended Complaint references the NYSHRL and the NYCHRL.  (TAC ¶¶ 92, 117, 144).  The Court understands that Plaintiff intends to assert claims of housing discrimination under these statutes based upon the same set of facts undergirding his FHA claims.  *Haber* v. *ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012) ("NYSHRL[] and NYCHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA.").  Defendant seeks to have both the NYSHRL and the NYCHRL causes of action dismissed.  But Defendant's sole argument on this point assumes that the Court will dismiss each of Plaintiff's causes of action arising under federal law:  Defendant asks the Court to decline to exercise supplemental jurisdiction over any remaining state or local claims.  (Def. Br. 22-23).  As addressed above, Plaintiff's claims brought under § 1983, the FHA, and the Rehabilitation Act have not been dismissed, rendering Defendant's arguments concerning supplemental jurisdiction irrelevant.  Thus, Defendant's arguments in favor of dismissal of Plaintiff's NYSHRL and NYCHRL claims fail.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiff's claims brought under the Education Law, the PPPL, the SSN Protection Law, and the ADA are dismissed; but Plaintiff's claims brought under § 1983, the FHA, the NYSHRL, the NYCHRL, and the Rehabilitation Act survive Defendant's motion to dismiss.

On or before **September 4, 2020**, Defendant shall file a responsive pleading.  On or before **September 11, 2020**, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:   August 14, 2020
        New York, New York

                                   KATHERINE POLK FAILLA
                                 United States District Judge

*Sent by First Class Mail to:*
Peter Thompson
208 Dana Ave.
Columbus, OH 43223